## State of Vermont v. Brian D. Langlois

[667 A.2d 46]

No. 94-031

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 1, 1995

*William D. Wright*, Bennington County State's Attorney, and *David R. Fenster*, Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Robert M. Paolini* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Dooley, J.** Following the entry of a conditional guilty plea, defendant Brian Langlois appeals the Bennington District Court denial of his motion to suppress evidence obtained in a search of his motor vehicle. Defendant claims on appeal that (1) the trial court erroneously concluded that probable cause existed to search his vehicle without a warrant, and (2) defendant's consent to search a paper bag found in the vehicle was coerced by a misrepresentation of the police officer's power. We need not address the last claim because we conclude that no probable cause existed to search the vehicle, and accordingly, reverse.

On April 28, 1992, a Bennington police officer received a telephone call from a man who identified himself by name, but stated he was a stranger who would soon leave the area. The police have never seen or heard from the informant since that date. The caller told the officer that defendant was selling marijuana, and was currently "driving around" Main Street in Bennington in a 1989 grey, four-wheel-drive, GMC pick-up truck, and that the truck had fresh front-end damage. He said that earlier that night he had seen a paper bag filled with marijuana behind the front seat of the truck.

The officer ran a registration check on defendant and learned that he owned the type of truck the caller had described. The officer had seen the truck recently and remembered noticing it had front-end damage. Based on this information, the officer began patrolling Main Street, and when he saw the vehicle, he observed that no front license plate was visible. In light of this fact and the tip from the caller, he stopped defendant's truck.

The officer verified defendant's identity via his license and registration, and then requested that defendant step out of the vehicle. After defendant exited the truck, the officer pushed the seat of the truck forward revealing a large paper bag. The bag could not be seen with the seat in the upright position. The officer asked defendant what was in the bag, and defendant responded by asking the officer if he had a warrant. The officer informed defendant that he did not have a warrant, but that unless defendant consented to a search of the bag, the officer would seize the truck and then obtain a search warrant to

search the truck. Defendant consented to the search of the paper bag, and the officer discovered that it contained several individual baggies of a substance that appeared to be marijuana.

Defendant was charged with possession of marijuana, 18 V.S.A. § 4230(a)(2), and moved to suppress the bag and its contents. Following an adverse ruling on the motion, he entered a guilty plea conditional on his right to appeal the denial of the motion to suppress. He was sentenced to six months to three years in prison, all but sixty days suspended. This sentence was stayed pending appeal.

Defendant claims that the search of the vehicle which revealed the bag was unlawful under both the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution because the officer lacked both a warrant and probable cause to search. Although the officer was justified in stopping defendant's vehicle because the front license plate was not visible, see *State v. Crandall*, 162 Vt. 66, 70, 644 A.2d 320, 323 (1994) (stop can be made based on reasonable belief that suspect is engaged in criminal activity); 23 V.S.A. § 511 (describing manner in which license plates must be displayed), the parties agree that the warrantless search of the vehicle must be based on probable cause.[1] *State v. Goyette*, 156 Vt. 591, 594–95, 594 A.2d 432, 434 (1991). Probable cause exists if "there is a substantial basis for the police's belief that there was a fair probability of finding evidence of a crime in a particular place." *Goyette*, 156 Vt. at 595, 594 A.2d at 435. Vermont uses a "totality of the circumstances" standard to evaluate whether the police have a substantial basis to believe that evidence of a crime will be found in a particular place. *Id.* Where the belief is based on information from an informant, at least in part, we consider the reliability of the informant, the basis of the informant's knowledge, independent police corroboration of the information provided, and other factors which may give rise to suspicion in determining whether probable cause for a warrantless car search exists. See *id.* (describing various factors to consider in applying totality of circumstances test); see also *Illinois v. Gates*, 462 U.S. 213, 232 n.7, 237–38 (1983) (describing factors that support probable cause under a totality of circumstances test).

---

[1] The marijuana was not in plain view, and there was no claim by the State that a protective search was justified. On the latter point, the police officer testified that he had "no reason to be concerned for [his] safety."

The primary case evaluating the significance of an informant's tip in determining probable cause is *Illinois v. Gates*.[2] Prior to *Gates*, the United States Supreme Court had applied a two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 110–16 (1964), and *Spinelli v. United States*, 393 U.S. 410, 415–19 (1969), to the informant information requiring a showing that the informant was reliable and that the informant had a factual basis for the information provided. See *State v. Emmi*, 160 Vt. 377, 380–81, 628 A.2d 939, 941–42 (1993) (application of *Aguilar* and *Spinelli* test in warrant situations).

*Gates* abandoned this test in favor of an examination of the totality of the circumstances. *Gates*, 462 U.S. at 233. The Court reasoned that a deficiency in one of the prongs of the *Aguilar* and *Spinelli* analysis could be compensated for by a strong showing as to the other, or by some other indicia of reliability. *Id.* The Court noted that strict adherence to the "two-pronged test" would effectively prevent the police from ever relying on an anonymous informant's tip because neither the informant's reliability nor his basis of knowledge could ever be conclusively established. *Id.* at 237. The Court concluded that this type of formalistic approach is not necessary if the details of the informant's tip can be corroborated by independent police work. *Id.* at 241–42.

*Gates* dealt with a single anonymous letter that provided many details of future drug-trafficking actions to be taken by the defendant and his wife. See *id.* at 225. Their typical mode of operation was for the wife to drive to Florida from their home in Illinois, where she would leave the car stocked with drugs and fly home; the defendant would then fly to Florida and drive the car home. The informant provided the police with a specific date upon which this activity would occur. The Court concluded that independent police corroboration of much of this activity verified the accuracy of the informant's tip. *Id.* at 245. The Court reasoned that the level of detail provided suggested that the informant was someone who had access to reliable information about the couple's illicit activities. *Id.*

In *State v. Goyette*, we adopted the *Gates* analysis for evaluating warrantless searches under the Fourth Amendment. 156 Vt. at 595,

---

[2] Although *Gates* considered whether an informant's tip provided sufficient probable cause to obtain a warrant, as opposed to conducting a warrantless search, its analysis solely regarding the legitimacy of an informant's tip is equally applicable here. Indeed, we noted in *State v. Goyette* that the "totality of the circumstances" standard announced in *Gates* is "generally accepted as the probable cause benchmark in warrantless situations." 156 Vt. 591, 595 n.2, 594 A.2d 432, 434 n.2 (1991) (citing 1 W. LaFave, Search and Seizure § 3.1(c), at 551 (2d ed. 1987)).

594 A.2d at 434.[3] *Goyette* is the only Vermont case to have directly considered whether an informant's tip establishes sufficient probable cause to conduct a warrantless car search. In *Goyette*, this Court concluded that probable cause existed when a known and previously relied-upon informant told police that an out-of-state individual (defendant), staying with a named Vermonter, would be transporting cocaine into Vermont. The police corroborated this information by observing an out-of-state vehicle parked outside the Vermonter's home. In a second phone call, the informant notified the police that a substantial drug deal would occur the following day between the defendant and a suspected drug dealer living in Chester, Vermont, and they would be introduced by another individual who was known to the police from previous drug investigations. The police observed the defendant, accompanied by the individual who was to do the introductions, arrive at the dealer's residence, stay for approximately two hours, and then depart. The police followed the car for a few miles, and while they were pulling it over, they noticed defendant duck down as if to hide or retrieve something from under his seat. The Court concluded that all of these facts taken in concert established probable cause for a warrantless search of the vehicle, in which cocaine was found under the passenger seat. *Id.* at 596, 594 A.2d at 435.

The *Goyette* facts differ significantly from those in this case. The informant here was unknown to the police, and the police had no means of ascertaining or establishing the reliability of his information. Nothing established the basis for the information other than the conclusory claim that he had seen the bag. Although, as *Gates* held, these traditional indications of reliability are not requirements, we see little to make up for their absence.

■ Other than the claim that defendant had drugs, the information the informant provided was readily available to any member of the public who could observe defendant's vehicle. There was nothing particularized or predictive about the information, except the unexceptionable fact that defendant was "presently driving around Main

---

[3] We have retained the two-prong test in determining whether a search warrant is supported by probable cause because that test is required by V.R.Cr.P. 41(c). See *State v. Emmi*, 160 Vt. 377, 381, 628 A.2d 939, 941–42 (1993); *State v. Ballou*, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987). We have never determined how probable cause must be shown for warrantless searches under Article 11. In view of our disposition, we do not need to address that issue here. We assume that the *Gates* analysis applies under Article 11.

Street in Bennington" in his truck. The informant did not provide police with the type of information that could be independently corroborated, such as specific accounts of travel plans, routes to be taken, descriptions of accompanying passengers, or other such details. Nor did the officer observe defendant engaged in any suspicious activity, and defendant did not make any unusual or furtive gestures while he was being pulled over.

Our review of decisions from other jurisdictions supports a conclusion that the officer here did not have probable cause to conduct a warrantless search of the vehicle. See *United States v. Ornelas-Ledesma*, 16 F.3d 714, 718 (7th Cir. 1994) (unknown informant's uncorroborated tip cannot by itself furnish probable cause to search); *State v. Miller*, 397 S.E.2d 508, 509 (Ga. Ct. App. 1990) (no probable cause to search vehicle where anonymous caller identified it and its occupants and stated it was carrying cocaine from a named city to another named city); *State v. Phillips*, 696 P.2d 346, 350 (Haw. 1985) (no probable cause to search where anonymous informant specifically described vehicle allegedly involved in criminal activity, but where police observed no such activity when they reached scene); *Glass v. State*, 681 S.W.2d 599, 601 (Tex. Crim. App. 1984) (anonymous telephone call "standing alone" will never provide probable cause to search automobile).

It is noteworthy that the Supreme Court of New Hampshire has held that similar information provided by an informant, with similar corroboration, was insufficient for even an investigatory stop requiring only reasonable suspicion of criminal activity and not probable cause. In *State v. Kennison*, 590 A.2d 1099, 1100 (N.H. 1991), the court held that an investigative stop was not warranted based upon an anonymous informant's tip that he had seen marijuana in the trunk of defendant's blue Cadillac, and where the informant identified where defendant worked and at what time she would leave her place of employment. The caller stated that defendant would drive home from work and would thereafter make deliveries of marijuana.

The New Hampshire court emphasized exactly the factors we find significant here: (1) an unknown informant has no "track record," and therefore lacks proof of reliability, *id.* at 1101; (2) the basis of knowledge was "minimally shown" by a statement that the caller had seen drugs in the car without an explanation of how he could make such an observation, *id.*; (3) the factual information provided was "of a kind readily available to many people," *id.*; (4) the corroboration was of "mundane, innocent facts easily available to co-workers or friends"

and not of any of the incriminating allegations, *id.*; (5) the police saw no suspicious or incriminating activity in their surveillance of defendant, *id.*; and (6) the tip did not contain "the wealth of intimate detail" necessary to make it self-verifying, *id.* at 1102. See also *Commonwealth v. Lyons*, 564 N.E.2d 390, 393 (Mass. 1990) (no reasonable suspicion for investigatory stop where anonymous informant told police that two white men possessing narcotics would be headed north on particular highway in silver Hyundai bearing specifically identified Maine license plate number).[4]

The only distinction between this case and many of the decided cases from other jurisdictions is that the caller here gave a name. We find this to be a distinction without a difference, where the police cannot verify the name and make no attempt to do so. There is nothing to indicate that the name was not fictitious. Even if the name were accurate, and the caller risked some adverse consequences from providing inaccurate information, there is still no track record of reliability. See *Kennison*, 590 A.2d at 1101.

We conclude that the information provided by the informant, and the limited corroboration developed by the police, was insufficient to establish probable cause to search defendant's vehicle. The bag, and the marijuana within it, discovered during the search must be excluded from evidence.

*Reversed.*

---

[4] Massachusetts has rejected the "totality of the circumstances" standard for determining either probable cause or reasonable suspicion. However, the court observed in a footnote that even under the flexible "totality of the circumstances" standard, these facts would not necessarily establish reasonable suspicion. See *Commonwealth v. Lyons*, 564 N.E.2d 390, 393 n.5 (Mass. 1990). Like the facts in this case, no future behavior was verified, and the only facts corroborated were descriptive obvious details. *Id.* The information did not reveal any "inside information" or any details indicating special familiarity. *Id.*